EPHRAIM HAINES and JAMES M. EPPLEY, Trading
as E. HAINES & Co. *vs.* LUKE J. PEARCE.

*When the taking of a Bill or order on a third person in payment*
*of an Antecedent debt, will operate to Extinguish the Debt—*
*Novation—Laches.*

The taking of a bill or order on a third person in payment of an antecedent
debt, will not *per se* operate to extinguish the debt unless such be the agree-
ment between the parties; and the burden of proving such agreement rests
upon the defendant, the presumption of law in such case being that the bill
or order is taken as conditional payment only.

It is not required, however, that such agreement should be expressed in terms;
it may be established by the facts and circumstances attending the trans-
action, which taken in connection with the language of the parties justify
the inference that such was their agreement and intention.

The plaintiffs kept a feed store, and the defendant purchased feed from them at
different times, amounting in the whole to $346.13. Some of the items in
the bill were purchased prior to the 7th of July, 1870, and some afterwards.
In January, 1873, suit was brought to recover the amount of this bill. On
the trial it appeared in evidence that on the 7th of July, 1870, the defen-
dant gave to the plaintiffs three orders, amounting in the aggregate to
$320.63 on the "Baltimore County Dairy Association." One of the orders
was payable at once, one on the 10th of August, and one on the 10th of
September, 1870. The defendant testified that the orders were given for the
amount of his bill then due; that one of the plaintiffs said he would take
orders on the Association, if its President would accept them; the defendant
saw the President and obtained his written acceptance of the orders; he
returned to the plaintiff who said "it was all right, he would take the
orders, and would take orders for all the feed the defendant wanted." By
the terms of the acceptance, the President agreed to "charge the orders to
the defendant's account with the Association and give the plaintiffs credit for
them as they became due." In accordance with this arrangement the plain-
tiffs charged the whole amount of the orders in their account current with
the Dairy Association, and went on afterwards to supply the defendant with
goods as he required. The defendant proved that he had no notice of the

non-payment of the orders, and no demand on him was made by the plaintiffs until some months after the Association broke up; that in July, 1870, the Dairy Association owed him three times the amount of the orders which he has never collected. One of the plaintiffs testified that at the time the orders were given he told the defendant that the Association owed the plaintiffs; that he would take the orders and collect them if he could, and pass them to the defendant's credit, if he got the money; that he never collected a cent of it, and notified the defendant soon after of the non-payment; that there was a distinct understanding with the defendant that he was not to be credited unless the orders were paid. It was in evidence that on the 12th of September, 1870, the plaintiffs instituted an action of attachment against the Dairy Association upon an account which was filed as the voucher of their claim; one item of which account was for "accepted orders of the defendant, $320.63." Under the attachment proceeding, certain chattels were seized by the sheriff, and under an order of the Court, passed at the instance of the plaintiffs, were sold, realizing in excess of the expenses and sheriff's costs $959.74. What disposition was made of this, was not shown; but on the 18th of September, 1873, the attachment was dismissed by order of the plaintiffs' attorney; and by order of the Court the plaintiffs were allowed to withdraw from the files of the Court the vouchers of their claim. It was further proved that after the 7th of July, the plaintiffs received several sums of money from the Dairy Association, which exceeded the amount of the orders, and which were credited to the Association in their general account current and on the account filed in the attachment suit; by which it appeared that the balance due the plaintiffs from the Association was $959.09, including the amount of the defendant's orders of the 7th of July. The plaintiffs held on to the orders, merely charged them in their account against the Association, took no steps to collect them until the 12th of September, 1870, when they sued out their attachment. HELD:

1st. That there was evidence from which the jury could find that the debt of the defendant for goods purchased had been paid and extinguished *pro tanto*, by the orders and acceptance of the 7th of July.

2nd. That even if the acceptances of the Association, had been taken only as collateral, it was the duty of the plaintiffs to exercise diligence in collecting them, and upon failure of the Association to pay them when due, to give the defendant reasonable notice, and having been guilty of laches in this respect, the defendant was entitled to be credited with the amount of the acceptances.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiffs offered the following prayers, the seventh of which was granted, and the others were refused :

1. If the jury find that the goods were sold and delivered by the plaintiffs to the defendant, as stated in the bill of particulars, and shall further find that the plaintiffs have not received the money for the same, then the plaintiffs are entitled to recover, though the jury shall believe the statement made by the defendant on his cross-examination, that when the orders were offered by the defendant to the plaintiffs, the plaintiff Eppley, said that he would take the orders on the Dairy Association, if Councilman, the President, would accept them, and that when the defendant returned and handed the orders and acceptance offered in evidence to Eppley ; Eppley said : "It is all right, I will take the orders on the Association for all the feed you want," and nothing further was said on the subject ; provided, the jury shall further find that the plaintiffs at the trial-table, tendered and offered to return the orders and acceptances to the defendant.

2. Even if the jury shall find the statement of the defendant, made on the cross-examination to be true, that he called on the plaintiff Eppley and offered to give the orders offered in evidence, and that Eppley agreed to take the orders, provided Councilman, the President of the Association, would accept them, and that he took the orders to Councilman, who accepted them, and that he then took them back to Eppley, and that Eppley received them, and said to him that it was all right ; and that the plaintiffs would take orders on the Dairy Association for all the feed he wanted, and this was all that was said on the matter ; this does not constitute a sufficient agreement to take the orders as payment of the account of the plaintiffs already contracted.

3. That the burden of proof rests on the defendant, to show that the orders were received as payment by the plaintiffs, of his account previously due, and that the defendant has offered no competent evidence on that point.

4. That there is no competent evidence in the cause, of any suit brought by the plaintiffs against the Baltimore County Dairy Association.

5. That as the holders of the orders declared upon, the plaintiffs had failed to collect them by suit in their own names if they held them as collaterals only, and that no inference that they were received as payment, can be drawn from the fact that suit was brought against the Dairy Association by the plaintiffs in their own names on said orders.

6. That it was not necessary, in order to enable the defendant to recover hereafter on the accepted orders from the Dairy Association, that the orders offered in evidence should be protested, as that notice of non-payment should be given to the defendant.

7. That the burden rests on the defendant to prove the orders were received as payment.

The defendant offered four prayers; the first and second of which were rejected, and the others as follows, were granted:

3. That if the jury find that the three orders and acceptances dated July 7th, 1870, and offered in evidence, were given by the defendant and received by the plaintiffs, with the understanding that said orders should be in satisfaction and extinguishment of the account for goods sold to the defendant, to the extent of the amount of said orders, for the price of which this action was instituted, the defendant is entitled to be credited in this suit with the amount of said orders.

4. That if the plaintiffs received the three orders or acceptances, and undertook to collect them, and to apply the proceeds to the indebtedness of the defendant; and if

they believe that by proper diligence the plaintiffs could have collected said orders, and that through the negligence or laches of the plaintiffs they were not collected, and no notice of their non-payment at maturity was given by the plaintiffs to the defendant, then the defendant is entitled to be credited with them in this case as if they had been paid.

To the rejection of their prayers and to the granting of those of the defendant, the plaintiffs excepted.

The jury rendered a verdict in favor of the plaintiffs for $25.50, and judgment was entered accordingly. The plaintiffs appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

*R. R. Boarman* and *William A. Fisher*, for the appellants.

That the plaintiffs' first three prayers state the correct rule of law is settled by the following cases: *Berry vs. Griffin*, 10 *Md.*, 27; *Glenn vs. Smith*, 2 *G. & J.*, 493; *Crawford vs. Berry*, 6 *G. & J.*, 72; *Yates vs. Donaldson*, 5 *Md.*, 396.

For the like reason, the third prayer of the defendant should have been rejected for lack of evidence to support it.

The fifth prayer of the plaintiffs should also have been granted. The orders in question were part of the cause of action in an attachment sued out by the plaintiffs against the Dairy Association, and by reason of the rejection of this prayer, the defendant was enabled to argue successfully to an inexperienced jury, that the institution of suit by the plaintiffs in their own names on the orders, was conclusive proof that they had been accepted in payment.

If the orders were accepted as collateral, or in any manner other than as payment, the plaintiffs had the right to sue upon and endeavor to collect them. As they had a

special property in them, it was right and usual that they should sue in their own names, and no inference that they were accepted as payment could be legitimately drawn from this circumstance. Indeed the case of *Berry vs. Griffin*, 10 *Md.*, 28, is conclusive as to this point, since it was not considered that there was there any evidence that the note had been accepted as payment, although the plaintiff actually sued and *obtained judgment in his own name.*

The sixth prayer of the plaintiffs should have been granted. The suit was not upon the *orders*, but upon the *open account*, and the right of the plaintiffs to recover could not be affected by the failure to protest the orders, and give notice to the defendant in any event. Besides the orders were not instruments which it was necessary under the law merchant, to protest.

The fourth prayer of the defendant, granted by the Court, erroneously assumes that it was necessary to protest the orders. The latter prayer was also faulty in that it enabled the jury to find that the orders were not collected by reason of the laches or negligence of the plaintiffs, and there was not a shadow of proof to support such a proposition.

*Arthur W. Machen,* for the appellee.

The facts present a clear case of *Novation*—the substitution of the Dairy Association for the defendant, as debtor, to the amount of the orders, in his place. Such an arrangement requires the concurrence of all three parties; and here all concurred. This is not the mere case of the transfer of a negotiable instrument by the debtor to his creditor. But, by special agreement, the appellee, as the orders matured was charged with the amount by the Association, extinguishing his claim against it, and the appellants credited therewith, in their own account with the Association. The acceptance is explicit on this point, showing what was the understanding of the Association,

and the appellants necessarily adopted it when they received the paper. That all parties acted upon it is shown by the account between the Association and the appellants, filed by the latter in the Superior Court, and by the total omission to notify the appellee of any default on the part of the Association, or to set up any claim against him for over two years. *Addison on Contracts*, 817, 821; 1 *Parsons on Contracts, title Novation*, 187; *Dickinson vs. Marrow*, 14 *M. & W.*, 713; *Wilson vs. Coupland*, 5 *B. & Ald.*, 228; *Crowfoot vs. Gurney*, 9 *Bing.*, 372.

While the doctrine is unquestionable that the taking of a bill drawn on a third party by way of payment of a precedent debt, will not *per se* operate as satisfaction of the debt, being presumptively intended only as a conditional payment, it is equally certain that it may by agreement operate as satisfaction, and that such agreement need not be declared in terms, but may be implied from circumstances justifying the inference. *Story on Prom. Notes*, sec. 104; *Yates vs. Donaldson*, 5 *Md.*, 396; *Phelan vs. Crosby*, 2 *Gill*, 462; *Brown vs. Jackson*, 2 *Wash. C. C.*, 24, 27; *Harris vs. Lindsay*, 4 *Wash.*, 271; *Hoopes vs. Strasburger*, 37 *Md.*, 401; *Hurley vs. Hollyday*, 35 *Md.*, 473; *Sard vs. Rhodes*, 1 *M. & Wels.*, 155.

In this case there is no proof that the orders and acceptance were taken for a precedent debt. The plaintiffs' bill of particulars claimed *some subsequent* deliveries of goods, and there is no *evidence* of any antecedent sales.

The plaintiffs' fifth prayer was objectionable as assuming a previously contracted debt, without evidence.

The defendant was at any rate discharged by the laches of the plaintiffs. *Orear & Berkley vs. McDonald*, 9 *Gill*, 360; *Glenn vs. Smith*, 2 *G. & J.*, 493; *Smith vs. Mercer*, 3 *Law Reports, Exch.*, 51; *Hopkins vs. Ware*, 4 *Law Rep. Ex.*, 268; *Peacock vs. Pursell*, 14 *C. B. N. S.*, 728; *Parsons on Notes and Bills*, 154; *Addison on Contracts*, 953.

BARTOL, C. J., delivered the opinion of the Court.

This is an action of *assumpsit* for goods sold and delivered by the appellants to the appellee.

The only exception taken by the appellants, was to the ruling of the Circuit Court upon the prayers. In order to understand the questions presented, a brief statement of the facts of the case is necessary.

The appellee, a farmer, had been supplying milk to the " Baltimore County Dairy Association," a corporation in which the appellants were interested as stockholders, and of which Eppley subsequently became president. The appellants kept a feed store, and the appellee purchased feed from them at different times, amounting in the whole to $346.13, the account for which forms their bill of particulars in this case. This has been omitted from the record; but it appears by the agreement of counsel, that some of the charges were prior in date to the 7th of July, 1870, and some afterwards. On that day, the appellee gave to the appellants the following orders on the Dairy Association, with the written acceptance of *Councilman,* the then president, annexed thereto:

BALTIMORE, July 7th, 1870.

Baltimore County Dairy Association, pay to E. Haines & Co., one hundred and sixty dollars, and charge to account of                    LUKE J. PEARCE.

$160.00.    To Dr. J. T. Councilman, Presd't.

BALTIMORE, July 7, 1870.,

Baltimore County Dairy Association, pay to E. Haines & Co., or order, eighty dollars from amount that may be due me for milk, on the 10th August, 1870.

LUKE J. PEARCE.

$80.00.    To Dr. J. T. Councilman, Presd't.

BALTIMORE, July 7th, 1870.

Baltimore County Dairy Association, pay to E. Haines & Co., eighty dollars and sixty three cents from amount of money that may be due me on 10th September, for milk furnished.                    LUKE J. PEARCE.

$80.63.    To Dr. J. T. Councilman, Presd't.


Attached to these orders was the following:

BALTIMORE, July 7th, 1870.

E. Haines & Co.

Gents:—1 accept the orders of Luke J. Pearce, and will charge them to his acct., giving you credit as they become due.                    J. T. COUNCILMAN, Pres. B. C. D. A.


At the trial, the testimony of the appellee was that the orders were given for the amount of his bill then due. Eppley said he would take orders on the Association, if Councilman would accept them as president; that he (witness) went to see Councilman and got the acceptance, offered in evidence, to satisfy Eppley, and Eppley took the orders. Witness considered that this settled the matter, and he never thought or heard of the orders afterwards, until just before this suit, (which was commenced in January, 1873.) He further stated that he signed and gave the orders to the plaintiffs for the bill, that he had no notice of the non-payment, and no demand on him was made by plaintiffs, until some months after the Association broke up. That in July, 1870, the Dairy Association owed him three times the amount of the orders, and that he never collected it.

On the other hand, the plaintiff, Eppley, testified that at the time the orders were given, he told Pearce that the Association owed Haines & Co.; and that he would take the orders, and collect them if he could, and pass them to

his, Pearce's credit, if he got the money; that he never collected a cent of it; and notified the defendant soon after of the non-payment—it may have been a week or a month after: and stated that there was a distinct understanding with Pearce, that he was not to be credited unless the orders were paid.

There was evidence in the cause showing that on the 12th September, 1870, the appellants instituted an action of attachment in the Superior Court, against the Dairy Association, upon an account, which was filed as the voucher of their claim; one item of which account was for "*Accepted orders of Luke J. Pearce, $320.63.*"

It appears by the proceedings, which by agreement have been made a part of this record; that certain chattels were seized by the sheriff, which were sold under an order of the Court passed at the instance of the plaintiffs, and realized in excess of the expenses and sheriff's costs $959.74. What disposition was made of this money does not appear; but on the 18th day of September, 1873, the attachment was dismissed by order of plaintiffs' attorneys. And by order of the Court the plaintiffs were allowed to withdraw from the files of the Court the vouchers of their claim.

It was further proved that after the orders of July 7th were given, the appellants received several sums of money from the Dairy Association, viz: $290, July 23rd, 1870; $15.37, September 1st, 1870, and $82.50, September 3rd, 1870. These sums were credited on the account filed in the attachment suit; by which it appeared that the balance due the appellants from the Association was $959.09—including the amount of Pearce's orders of July 7th.

At the trial the appellants tendered to the appellee the orders and acceptance.

Upon this state of the proof, the legal questions presented were:

1st. Whether there was evidence from which the jury could find, that the debt of the appellee for goods pur-

chased had been paid and extinguished *pro tanto,* by the orders and acceptance of July 7th, and

2ndly. Whether there was evidence of laches on the part of the appellants, which, if found by the jury, would operate in law to release the appellee from liability, even if he was not discharged originally by giving the orders and acceptance. On both these questions the Circuit Court instructed the jury in the affirmative, by granting the appellee's *third and fourth* prayers.

The general proposition is well settled, that the taking of a bill or order on a third person in payment of an antecedent debt, will not *per se* operate to extinguish the debt, unless such be the agreement between the parties. *Glenn vs. Smith,* 2 *G. & J.,* 493 ; *Yates vs. Donaldson,* 5 *Md.,* 396 ; *Berry vs. Griffin,* 10 *Md.,* 27. The burden of proving such agreement rests upon the defendant, the presumption of law in such case being that the bill or order is taken as conditional payment only.

The Court said in *Glenn vs. Smith,* "there must be an *express* agreement by the creditor to receive the note or bill absolutely as payment, and to run the risk of its being paid." · 2 *G. & J.* 509. This language was quoted in *Berry vs. Griffin,* 10 *Md.,* 30, and in *Hurley vs. Hollyday,* 35 *Md.,* 473.

The dispute in this case seems to have arisen, in a great measure from the use of the words *express agreement,* in stating the rule. By this we understand that such must be proved to have been the contract or agreement between the parties ; but it is not required that it be expressed in terms; it may be established by the facts and circumstances attending the transaction, which taken in connection with the language of the parties justify the inference that such was the agreement and intention of the parties.

Whether such a contract existed between the parties, is a question for the jury, as was decided in *Yates vs. Donaldson,* 5 *Md.,* 396.

In this case it appears by the agreement of counsel filed in the cause, that on the 7th July, 1870, only a part of the debt of the appellee had been contracted, how much does not appear. The appellee at that time desiring to continue his dealings and purchase other goods from the appellants, is told by Eppley that they would take orders on the Association, if Councilman (the President) would accept them; whereupon the appellee went to see Councilman and obtained from him the written acceptance of the orders—Eppley said "it was all right, he would take the orders, and would take orders for all the feed he wanted."

By the terms of Councilman's acceptance he agreed to "charge the orders to the appellee's account with the Association, and give the appellants credit for them as they became due." In accordance with this arrangement, the appellants charged the whole amount of the orders in their account current with the Dairy Association, and went on afterwards to supply the appellee with goods as he required them.

One of the orders was payable at once, one of them on the 10th of Aug., and one on the 10th of September, 1870. It appears by the appellants' own testimony, that after the 7th of July, they received in cash from the Dairy Association more than the amount of the orders, the cash so paid them was credited to the Association on their general account current. The appellants held on to the orders, merely charged them in their account against the Association, took no steps to collect them, until September 12th, 1870, when they sued out their attachment, and according to the appellee's testimony, gave him no notice that the orders remained unpaid, until 1873, shortly before this suit was brought.

. These facts, if believed by the jury, were in our opinion sufficient in law, to justify them in finding that the appellants had agreed to take the acceptances of the Association, in satisfaction of the appellee's account, and to look

to the Association for payment; and consequently there was no error in granting the appellee's *third* prayer.

We are also of opinion that the appellee's *fourth* prayer was properly granted. Even if the acceptances of the Association, had been taken only as collateral, it was clearly the duty of the appellants to exercise diligence in collecting them, and upon the failure of the Association to pay them when due, the appellee was entitled to reasonable notice. In this case there was evidence of laches on the part of the appellants, and the Circuit Court committed no error in granting the appellee's *fourth* prayer, and in refusing the sixth prayer of the appellants. *Glenn vs. Smith,* 2 *G. & J.,* 493 ; *Orear vs. McDonald,* 9 *Gill,* 360 ; *Addison on Contracts,* 955.

The appellants' *first* prayer was properly refused. Even if it were conceded that the testimony of the appellee as to what took place between him and Eppley at the time the orders and acceptance were given, would not be legally sufficient, if standing alone, to prove an agreement on the part of the appellants, to take them absolutely as payment; it would have been error to instruct the jury as proposed by this prayer ; that the plaintiffs were entitled to recover, although the jury should believe the testimony of the defendant in that particular. By such an instruction the jury would have been misled, by withdrawing from their consideration, the other facts and circumstances attending the transaction, to which we have adverted, which tended to explain the meaning of the language used, and which as we have said, when taken in connection with what transpired between the parties, as testified by the appellee, were sufficient in law to authorize the jury to find there was a contract and understanding between them, that the acceptance should be received in payment and satisfaction for goods which had before been sold to the appellee, and for such as he might thereafter purchase, and that the appellants would look exclusively to the Association as their debtor.

The objections to a prayer of this kind have been clearly stated in *Riggin vs. Patapsco Ins. Co.*, 7 *H. & J.*, 291; *Bosley vs. Ches. Ins. Co.*, 3 *G. & J.*, 462; *McTavish vs. Carroll*, 7 *Md.*, 366; *Adams. vs. Capron*, 21 *Md.*, 205; *Winner vs. Penniman*, 35 *Md.*, 168; *B & O. R. R. Co. vs. Shipley*, 31 *Md.*, 368, and other cases might be cited to the same effect.

For a like reason the *second* prayer of the appellants was properly refused. Though differing somewhat in phraseology from their first prayer, it is liable to a similar objection; as it was an effort to withdraw from the consideration of the jury facts and circumstances attending the transaction, and to confine them to the words which were spoken by Eppley at the time the orders and acceptance were given to him. In this case the actual agreement or understanding between the parties, is not to be deduced simply from the words spoken in that interview, and referred to in the prayers; but must be determined by the jury from the acts of the parties, and all the attending facts and circumstances disclosed in the evidence. These were sufficient to justify the jury in finding that the agreement was that the Dairy Association should be substituted for the appellee, as debtor to the appellants, to the amount of the orders. By a concurrence of the Association in this agreement, of which there was evidence; their debt to the appellee to that extent was paid, and the debt of the appellee to the appellants was to the same extent extinguished. The transaction constituted what is sometimes called *novation;* or substitution of one debtor in place of another. *Addison on Contracts, ch.* 22, *sec.* 3; 1 *Parsons on Contracts, ch.* 13; *White vs. Solomonsky*, 30 *Md.*, 589.

There was no error in refusing the *fifth* prayer of the appellants. Unquestionably as holders of the acceptances, they would have been entitled to collect them by suit in their own names, as asserted in the prayer, although they had been taken merely as collaterals. Still it would have

been error to grant this prayer. The evidence in the cause showed, not that the appellants had sued the Dairy Association on their acceptances as such; their suit was brought upon their general account current, in which the accepted orders were charged as one of the items. The form in which the account was made out, taken together with the terms of the acceptance, was evidence proper for the jury to consider, as tending to prove that the orders had not been taken merely as collaterals, but absolutely as payment.

The *fourth* prayer of the appellants has been abandoned. By granting their *seventh* prayer the jury were instructed, that the burden rested on the defendant, to prove the orders were received as payment. There being evidence competent for the jury to consider, tending to prove that such was the agreement or understanding between the parties, the appellants' *third* prayer was properly refused.

Finding no error in the ruling of the Circuit Court upon the prayers, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 9th December, 1874.)