SOLOMON S. ECKER, Executor of JONAS ECKER, deceased *vs.* THE FIRST NATIONAL BANK OF NEW WINDSOR.

*Legal sufficiency of Evidence to justify a Jury in finding an express Agreement that a certain Promissory note should be accepted in Payment of certain Antecedent notes—Sufficiency of Acknowledgment to remove the bar of the Statute of Limitations—Powers and duties of a Bank cashier.*

E. S. and H. were partners trading under the firm name of J. E. & Co. The firm was indebted to the F. N. Bank on two notes, one for $3000, dated the 3rd of April, 1869, at ninety days, and the other for $1200, dated the 6th of May, 1870, also payable at ninety days. These notes were signed in the firm name, and also by the partners themselves. E. died in August, 1870. On the 8th of May, 1872, S. and H., the surviving partners, went to the Bank, paid $200 in cash, and gave a note for $4000, that being the unpaid balance of the two notes, and thereupon the cashier delivered up these two notes to them, or to one of them. This note for $4000 was signed in the firm name, as well as by S. and H. individually. The President of the Bank knew of the surrender of the old notes by the cashier, to the parties executing the new note; and the cashier testified that the Board of directors ratified his act; that the transaction of the 8th of May, 1872, was submitted to the

Board, and was by them approved; that the offering book on which there was an entry of this transaction, was submitted to the Board, and was approved; that there was an entry of "*paid*" opposite this transaction in the book when it was submitted to the Board, and they made no objection to it; and that such an entry opposite to the memorandum of any transaction signified, either that the note was paid in cash, or that a new note was given; that he did not call the special attention of the Board to the transaction, and nothing in particular was said by him to the Board in regard to it. It was also proved that the Bank accepted and took a renewal of the note for $4000 on the 4th of September, 1874, and that interest was paid on the same up to the 27th of January, 1875; that on the first of February, 1874, the firm of S. and H. had a credit of $2100 with the Bank, and they were considered solvent until about the 6th of February, 1875, when H. and wife gave a mortgage to secure this and other debts owing by S. and himself to the Bank; that the Bank subsequently received $1707.81 on account of this mortgage, and also the sum of $1110 from the sons of S., with the agreement on the part of the directors of the Bank that the same would be received in full satisfaction of their father's share due on the note for $4000, and a receipt for that sum, as the principal and interest of his share thereof, was endorsed on that note by the cashier in pursuance of this understanding and agreement between the Bank and the sons of S. who made the payment; that the Bank never filed any claim against the estate of E., until after H. had conveyed his property to a trustee for the benefit of his creditors; and that the cashier of the Bank had within the last year, charged the note for $4000 up to profit and loss. In an action by the Bank against the executor of E. to recover on the original notes, it was HELD:

That the facts and circumstances disclosed by this proof, if found by a jury to be true, were legally sufficient to justify them in finding that there was an express agreement between the Bank on the one side, and S. and H. on the other, that the money and note paid and given on the 8th of May, 1872, should be received and accepted in payment and discharge of the antecedent notes to which E. was a party, and of the debt they represented.

In an action by a Bank, against an executor to recover on certain promissory notes to which his testator was a party, declarations made to the President of the Bank, by the defendant, within three years before suit brought, that he was at all times ready, and willing to pay the amount ascertained to be due to the plaintiff, from

his testator's estate; that after the Bank had gotten out of the surviving partners of the firm of which his testator had been a member, all that it could, he would pay the balance of the indebtedness; that he, as executor, was liable for all that could not be gotten out of the surviving partners; that the claim was just, but that he did not want to pay it in his own wrong, or assume the responsibility of having to pay it over again to the heirs and representatives of his testator, amount to a sufficient acknowledgment of the debt to remove the bar of the Statute of Limitations.

The cashier of a Bank, as such, has no power to accept a note signed by two parties only, in payment and discharge of a note upon which another party was also bound with the two, so as to release such third party from his indebtedness to the Bank. Such an act does not fall within the well-known range of powers and duties naturally and necessarily pertaining to the office of cashier. He cannot, *virtute officii*, release a surety upon a note even though the Bank holds other security to which it might resort, nor make collateral contracts or agreements of any kind.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial, among other evidence, Thomas F. Shepherd, the President of the plaintiff, testified that the defendant was a director in the Bank until two or three years after the death of Jonas Ecker, and he thought until 1874 or 1875; that the defendant told him frequently, at the meetings of the Board, that he, as executor, was, at all times, ready and willing to pay the amount ascertained to be due from his testator's estate; that after the Bank had gotten out of the surviving partners, all that it could, he would pay the balance; that he, as executor, was liable for all that could not be gotten out of the surviving partners; the defendant admitted the justness of the claim, but did not want to pay it in his own wrong, or take the responsibility of having to pay it over again; he always said he was willing to pay whenever the law

would allow him to do so; that the conversations which the witness had with the defendant in regard to the matter were within two years before this suit was brought.

The plaintiff offered the following nine prayers:

1. That if the Court finds from the evidence, that the firm of J. Ecker & Co., borrowed from the plaintiff the $1200, and gave therefor, to the plaintiff a promissory note dated 6th May, 1870, payable 90 days after date, signed by J. Ecker & Co., and also signed by Jonas Ecker, Joseph Stouffer and Henry Hawk, individually, and that on the 3rd of April, 1869, the said firm borrowed of plaintiff, $3000, and gave therefor, a promissory note for that sum, dated on said 3rd April, 1869, and payable 90 days after date, signed by said firm name, and also by said Jonas Ecker, Joseph Stouffer and Henry Hawk, individually, and that said Jonas Ecker died in August, 1870, and that said sums of money were due and unpaid to plaintiff; and that on 8th May, 1872, the cashier of the plaintiff called the attention of said Joseph Stouffer and Henry Hawk to the fact, that said two notes were long overdue, and that the said firm of J. Ecker & Co. had been composed of Jonas Ecker, in the proportion of one-half interest therein, and of the said Stouffer and Hawk, in the respective proportions of one-fourth interest therein; and that thereupon, the said Stouffer & Hawk gave the said cashier a note of that date, and payable 90 days after date, for $4000, signed in the firm's name J. Ecker & Co., and also by said Stouffer and Hawk, individually, and at the same time, paid to said cashier for the plaintiff, $200, and that the consideration of said $4000 note, was the money due to plaintiff on said two first mentioned notes, and that the same was given and received by said cashier, for, and on account of, said antecedent notes exclusively; and shall further find, that it was the usual course of business in said Bank for the cashier, after he had received or discounted notes without

the previous sanction of the President and Directors, to submit to the Board of said President and Directors, the offering book in which was entered a memorandum of said notes so discounted or received by the cashier; and shall find that said cashier, after he had received said $4000 note, entered in said offering book a memorandum thereof, and submitted said offering book with said memorandum to said Board of President and Directors, and that no particular attention was called to said note, and nothing said in relation thereto by and between said cashier and said Board of President and Directors; and shall further find, that said cashier, when he received said note, understood that he took it in payment of said sums of money due on said preceding notes, and that he did not communicate his said understanding to said Board of President and Directors of plaintiff, or any of them, and said nothing to said President and Directors, or any of them, on the subject of his said understanding, or on the subject of having received said note in payment of said antecedent notes; and if the Court shall find that said sum of $4000 due to plaintiff on said 8th May, 1872, has not been in fact paid, and that the sum of $1110 was paid on account of said indebtedness on 25th November, 1876, and the sum of $1708.71 was received by plaintiff from the estate of said Henry Hawk, on 20th March, 1879, and that the interest was paid on the indebtedness up to January 25th, 1875, and that no other sums of money have been paid to or received by plaintiff on account of said indebtedness, the plaintiff is entitled to recover in this case the balance of said sum of $4000 and interest thereon, after crediting said sums of money paid to the plaintiff; provided the Court shall further find, that the defendant, executor, within three years before this suit brought, acknowledged and said to the plaintiff, or to the President of the plaintiff, that he was desirous that the said partnership estate of said J. Ecker & Co.,

should  be settled up and  the amount of deficiency ascer-
tained, for which  the said estate of  said  Jonas Ecker was
liable, and  that whenever the amount  was ascertained  in
which the said  partnership was deficient  in assets to  pay
said  debt  to  plaintiff, he, the° defendant, was  ready and
willing to pay the amount thereof, for which  the estate of
said Jonas Ecker was liable, or words to that effect.

2.  That  if the Court  finds that  the sum  of $4000 was
due to the plaintiff on  8th  May, 1872, as set  out  in the
first  prayer, and  that the same  in fact has not  been paid,
and that no other payments have been made thereon than
as stated  in said  prayer, the  plaintiff  is  entitled, on  all
the evidence in  the  cause, to  recover  the  balance  due ;
provided, the  Court  shall  find  that within  three  years
before suit  brought, the defendant, executor, has acknow-
ledged the existence of  said indebtedness.

3.  That if the Court  believes the  testimony of  Thomas
F. Shepherd, the facts and  circumstances testified  to by
him are  a sufficient acknowledgment by defendant of the
existence of  the  indebtedness, to take  the. case out of the
bar of the Statute of  Limitations.

4.  That if  the  Court  finds from  the  evidence, that
within  three  years  before  this  suit  was  brought, the
defendant, executor, frequently said  to the president of
plaintiff, that  he was  ready  and  willing  to  pay  the
amount which  might be  found  to be  due to  plaintiff
whenever  the  deficiency of  the  assets of  J. Ecker  & Co.,
to pay the said  debt or any part thereof which  said assets
might  be  insufficient to pay, might  be  ascertained, the
same is a sufficient  acknowledgment to take  this case out
of the Statute of  Limitations.

5.  That if  the  Court  finds from  the  testimony, that
within  three  years  before suit  brought, the  defendant,
executor, proposed  to  plaintiff, that  if  plaintiff  would
arrange or  agree with  the  heirs or  distributees of  said
Jonas Ecker what amount would  be the balance due from

said estate, after settling up and ascertaining the insufficiency of the assets of the firm of J. Ecker & Co., and that if the adult of said heirs would agree, and the plaintiff would indemnify defendant against any claim against him, by the infant heir, or to that effect, he, the defendant, was ready and willing to pay the balance of said indebtedness, and would do so, the same is sufficient to take this case out of the bar of the Statute of Limitations.

6. That if the Court finds that within three years before suit brought, the defendant said to the plaintiff that he was ready and willing to pay the amount due to plaintiff, if he could do so properly, and that he did not want to pay it, and be liable to pay it over again to the heirs and representatives of said Jonas Ecker, the same is sufficient to remove the bar of Limitations.

7. That if the Court finds from the testimony that the then cashier of the plaintiff received the promissory note of 8th May, 1872, and understood and supposed that the same was in payment of the antecedent indebtedness set out in the first prayer, and the said cashier did not communicate his said understanding and supposition to the plaintiff, or to the president and directors thereof, or any of them, the said receipt of said note of 8th May aforesaid, was not payment of said antecedent indebtedness.

8. That there is no legally sufficient evidence in the cause from which the Court can find that the indebtedness due to plaintiff, on 8th May, 1872, mentioned in the evidence, was wholly paid and discharged.

9. That the evidence given, touching and concerning the payment of $1110, by or for account of Joseph Stouffer, is not legally sufficient to discharge the defendant from liability in this cause.

The defendant offered the three following prayers:

1. That if the Court shall find from the evidence, that on the 6th day of May, 1870, Jonas Ecker, Joseph Stouffer

and Henry Hawk were co-partners, trading under the name and firm of J. Ecker & Co., and conducting the business of lumber, coal and commission merchants, in the town of New Windsor, where plaintiff's place of business is, and was, and that said firm on the last mentioned day, borrowed from the plaintiff, the sum of $1200, and gave therefor, to the plaintiff, a joint and several promissory note, payable ninety days after date, signed by J. Ecker & Co., and also by the several members of said firm individually ; and further, that on the 3d of April, 1869, the said firm borrowed of the plaintiff the sum of $3000, and gave therefor, a joint and several promissory note to plaintiff, payable ninety days after date, signed by the said firm name, and also by the several members of said firm, individually; and further, that the said Jonas Ecker died in the month of August, 1870, and that said two promissory notes for $1200 and $3000 respectively, were due and unpaid at the death of said Ecker ; that said Stouffer and Hawk as surviving partners, continued in charge of the business of said firm to the date of the impetration of the writ in this cause ; and further, that on the 8th day of May, 1872, the cashier of the plaintiff called the attention of said surviving partners to the fact that said two notes were long overdue, and that thereupon, said surviving partners gave to the plaintiff a joint and several promissory note of that date, payable ninety days after date, for the sum of four thousand dollars, and signed by one of said surviving partners, with the firm name of J. Ecker & Co., and signed by said surviving partners individually, and at the same time, said surviving partners paid to the plaintiff the sum of $200, and the accrued interest on said two notes, and that the consideration of said $4000 note was the money due to plaintiff on said two first mentioned notes, and none other; that at the time of the making of said last mentioned promissory note, for the sum of $4000 by said surviving partners as before stated, the plaintiff

delivered to said surviving partners the two first men-
tioned notes, and that on the 4th day of September, 1874,
the said surviving partners gave to the plaintiff a joint
and several promissory note of that date for the sum of
$4000, payable sixty days after date, and signed by one of
said surviving partners, with the firm name of J. Ecker &
Co., and signed by said surviving partners individually,
and at the same time paid to plaintiff the accrued interest
on said note for $4000.00 dated 8th May, 1872, and that
thereupon the cashier of plaintiff delivered to said surviv-
ing partners the last mentioned note, and that the con-
sideration of the $4000 note, dated 4th Sept., 1874, was
the said $4000 note dated 8th May, 1872; and further,
that it was the usual course of business of the plaintiff for
its cashier, after he had received or discounted notes without
the previous sanction of the plaintiff's President and
Directors, to submit to the Board of Directors the offering
book in which was entered a memorandum of notes dis-
counted or received by the cashier; and shall find that
said cashier, after he had received the said $4000.00 note,
dated the 8th day of May, 1872, and said $4000.00 note
dated the 4th of September, 1874, and on each of said
occasions entered in said offering book a memorandum
thereof, and submitted said offering book with said mem-
orandum to the President and Directors of plaintiff without
comment thereon; and shall further find, that said cashier
when he received the said first mentioned $4000.00 note,
understood that he took the same in payment of the bal-
ance due on said two first mentioned notes for $1200.00
and $3000.00 respectively, and that he entered in writing
in said offering book, before the same was submitted to
said President and Directors, opposite to the entry of said
two notes for $1200.00 and $3000.00 respectively, the word
"paid," and that said cashier made no statement to said
President and Directors of or concerning said notes, or any
of them, or of his understanding of the several transac-

tions relating thereto; and shall further find, that the said surviving partners paid to plaintiff the accrued interest to January 27th, 1875, on the $4000.00 note, dated September 4th, 1874, and that on the 25th day of November, 1876, the said Joseph Stouffer, through his sons, paid to the plaintiff the sum of $1110.00, with an understanding and agreement with the plaintiff that he, said Stouffer, should be, and was thereby, relieved and discharged from any further liability on said last mentioned note, and that in pursuance of said agreement and understanding, the cashier of plaintiff endorsed, in writing, upon the back of said last mentioned note, as follows: "Nov. 25th, 1876, by cash paid by Joseph Stouffer, one thousand one hundred and ten dollars, it being principal and interest of his share of within note;" that on the 20th March, 1879, the plaintiff received from the estate of said Henry Hawk, the sum of $1708.71, and that no other sums of money have been received by the plaintiff, in payment or satisfaction of said last mentioned note; and shall further find that the said firm of J. Ecker & Co., at the time of the death of said Ecker, and until about the month of February, 1875, was considered by the plaintiff, and was dealt with, and was treated by the officers of the plaintiff, as solvent and in good standing financially, and that not until the 24th day of December, 1878, was any claim proven or passed against the estate of said Jonas Ecker, that then the plaintiff is not entitled to recover in this cause.

2. That upon the pleadings, and all the evidence in the cause, no legally sufficient evidence has been given of an acknowledgment, or a promise by the defendant to take this cause out of the operation of the Statute of Limitations, and that the plaintiff cannot recover under the pleadings and all the evidence.

3. That upon the pleadings, and all the evidence in the cause, the plaintiff is not entitled to recover.

Whereupon the Court (HAYDEN, J.) granted the prayers of the plaintiff, and rejected those of the defendant, and

the defendant excepted. The verdict and judgment were for the plaintiff, and the defendant appealed.

The cause was argued before MILLER, YELLOTT, STONE, ALVEY, and IRVING, J.

*James McSherry,* and *Charles B. Roberts,* for the appellant.

*Wm. P. Maulsby,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by the appellee against the executor of Jonas Ecker who died in August, 1870. The case was tried before the Court without the intervention of a jury, and upon an agreement waiving all errors in pleading, and admitting all testimony that would be admissible under any state of pleadings. In order to understand the cause of action, and the defence thereto, it is necessary to state briefly the material facts disclosed by the record.

It appears then that Ecker, Stouffer and Hawk, were partners trading under the firm name of J. Ecker & Co. This firm was indebted to the Bank on two notes, one for $3000, dated the 3rd of April, 1869, at ninety days, and the other for $1200, dated the 6th of May, 1870, also payable at ninety days. These notes were not only signed in the firm name, but also by the partners themselves, so that they were in fact not simply firm notes, but the joint and several obligations of the individual partners, and they constitute the cause of action. They were not produced at the trial, but evidence was given tending to show they had been lost or destroyed, and their contents were proved. This suit was brought against the executor of Ecker on the 2nd of February, 1880, and the defences set up are, 1st, that these notes had been paid and discharged so as to relieve

the estate of Ecker from any responsibility on account thereof, or for the debt they represented, and 2d, limitations.

We find no error in the rulings of the Court upon the question of limitations. The declarations of the executor as set out in the plaintiff's third, fourth, fifth and sixth prayers, if found by the Court or jury as matter of fact to have been made, amount to a sufficient acknowledgment of the debt to remove the bar of the Statute. But the main and important question in the case is, was the Court right in granting the plaintiff's eighth prayer to the effect that there is no legally sufficient evidence in the cause from which the Court can find that the indebtedness due to the Bank on account of these notes on the 8th of May, 1872, was wholly paid and discharged so as to relieve the estate of Ecker from any responsibility therefor?

It is proved that on the 8th of May, 1872, which was long after the death of Ecker, and long after the notes became due, Stouffer and Hawk, the surviving partners, went to the Bank, paid $200 in cash and gave a note for $4000, that being the unpaid balance of the two notes, and thereupon the cashier delivered up these notes to them or to one of them. This $4000 note was signed in the *firm name* as well as by Stouffer and Hawk individually. The partnership, however, was dissolved by the death of Ecker, and the surviving partners could not use the firm name so as to bind his estate for the new note. *Hurst & Berry vs. Hill,* 8 *Md.,* 399. The attaching, therefore, of the old firm name of J. Ecker & Co. to this note was a nugatory act, and it became simply the joint and several note of the individuals who signed it.

It was clearly competent for the Bank on the one hand, to receive and accept the $200 in money and the new note, and for Stouffer and Hawk, on the other, to pay and give the same in absolute payment and discharge of the antecedent notes and the debt they represented. If such

was the express agreement between these parties, the law allows it so to operate. Nor is it necessary that such an agreement should be expressed in terms, but it may be established by the facts and circumstances attending the transaction, and whether there was such a contract or not is a question of fact for the jury. *Haines & Eppley vs. Pearce*, 41 *Md.*, 231; *Yates vs. Donaldson*, 5 *Md.*, 396; *Thompson vs. Percival*, 5 *Barn. & Adol.*, 925. The inquiry then is, are there any facts disclosed by the testimony in this record, which, if believed by a jury, would be sufficient in law, to justify them in finding that such a contract existed.

The mere fact that the cashier received the new note, and understood or supposed it was in *payment* of the antecedent indebtedness, did not bind the Bank, or amount to such payment. In our opinion a cashier, as such, has no power to accept a note signed by two parties only, in payment and discharge of a note upon which another party was also bound with the two, so as to release such third party from his indebtedness to the Bank. Such an act does not fall within the well-known range of powers and duties naturally and necessarily pertaining to the office of cashier. He cannot, *virtute officii*, release a surety upon a note even though the Bank holds other security to which it might resort, nor make collateral contracts or agreements of any kind. *Morse on Banking*, 175, 189. Whether usage or custom in this particular Bank would suffice to confer such authority upon its cashier, is a question we need not decide, because there is no proof in this record that the cashier had ever before so acted in a similar case. He testifies that he took the $4000 note without the previous direction or knowledge of the Directors, " but as had always been his usual custom." This, however, is far from saying that it had been his habit or custom to take such a note *in payment* of antecedent notes or debts, and in *release* of parties bound thereby.

But, notwithstanding the cashier had no power thus to bind the corporation either by virtue of any special authority previously given, or by implication from usage and custom, still it was competent for the Directors to ratify his act when it was communicated to them, and if they approved it, or with full knowledge acquiesced therein, the Bank will be bound as effectually as if previous authority had been expressly delegated. On this point there is, in our judgment, evidence to go to the jury. It is proved not only that the old notes were delivered up by the cashier to the parties executing the new note, but that the President of the Bank (who was one of the Directors) knew that this had been done. The cashier also testifies that the Board of Directors ratified his act; that the transaction of the 8th of May, 1872, was submitted to the Board and was approved by them; that the offering book on which there was an entry of this transaction was submitted to the Board and was approved; that there was an entry of *"paid"* opposite this transaction in the book when it was submitted to the Board and they made no objection to it; and that such an entry opposite to the memorandum of any transaction signifies either that the note was paid in cash or a new note was given; that he did not call the special attention of the Board to this transaction, and nothing in particular was said by him to the Board in regard to it. From this we infer, and think a jury would be justified in inferring that the entry of *"paid"* in this book when it was before the Board, appeared opposite to, or so as to indicate that the old notes were paid by the $200 in cash and the new note. It is also proved that the Bank accepted and took a renewal of the $4000 note on the 4th of September, 1874, and that interest was paid on the same up to the 27th of January, 1875; that on the 1st of February, 1874, the firm of Stouffer & Hawk had a credit of $2100 with the Bank, and they were considered solvent until about the 6th of February, 1875, when Hawk and

wife gave a mortgage on certain real estate to secure this and other debts owing by Stouffer and himself to the Bank; that the Bank subsequently received $1707.81 on account of this mortgage, and also the sum of $1110 from the sons of Stouffer, with the agreement on the part of the Directors of the Bank that the same would be received in full satisfaction of their father's share due on the $4000 note, and a receipt for that sum, as the principal and interest of his share thereof, was endorsed on that note by the cashier in pursuance of this understanding and agreement between the Bank, and the sons of Stouffer who made the payment; that the Bank never filed any claim against Ecker's estate until after Hawk had conveyed his property to a trustee for the benefit of his creditors; and that the cashier of the Bank has, within the last year, charged the $4000 note up to profit and loss.

The facts and circumstances disclosed by this proof, if found by a jury to be true, are legally sufficient to justify them in finding that there was an express agreement between the Bank on the one side and Stouffer and Hawk on the other, that the money and note paid and given on the 8th of May, 1872, should be received and accepted in payment and discharge of the antecedent notes to which Ecker was a party, and of the debt they represented. In so deciding we do not mean to say there is not in the record opposing evidence, upon which a jury would be equally justified in finding the contrary. All that we decide is that the question whether there was such a contract or not must be left to the determination of the jury, and that there was error in granting the plaintiff's eighth prayer.

For this error the judgment must be reversed, and a new trial awarded. We find no error in the granting of the plaintiff's third, fourth, fifth, sixth, seventh and ninth prayers, nor in the rejection of the defendant's prayers; but it follows from what we have said there was error in the granting of the plaintiff's first, second and eighth prayers.

Western Maryland R. R. Co. *vs.* Carter.

Upon the new trial, if the verdict be in favor of the plaintiff, the bond required by the Act of 1876, ch. 345, must. be given before a judgment is entered thereon.

*Judgment reversed, and*
*new trial awarded.*

(Decided 1st February, 1883.)