[Minchener v. Henderson.]

# Minchener v. Henderson.

*Bill to Annul a Mortgage as Security for Husband's Debt.*

(Decided February 6, 1913.  61 South. 246.)

1. *Fraudulent Conveyances; Evidence; Sufficiency.*—Where the respondent filed a cross bill to cancel a deed from respondent's debtor to the debtor's wife, which deed conveyed a certain lot as a gift, in answer to a bill by the wife to declare a mortgage on said lot void as security for the husband's debt, the evidence was sufficient to sustain the finding that prior to the conveyance by the debtor to his wife he had agreed to give the creditor a mortgage on the lot for money advanced by the firm composed of the debtor and creditor, to enable the debtor to build a house on said lot.

2. *Same; Pleading; Variance.*—Where there was no variance between the allegations of the cross bill, and the evidence on the controlling issue as to whether a deed from the debtor to his wife was fraudulent, the fact that there were variances between the pleadings and proof as to other distinct equities in the case, could not have the effect to deprive the creditor of the right to a cancellation of the deed.

3. *Frauds; Statute; Executory Agreement.*—The statute does not apply to executed contracts, and hence, a mortgage executed pursuant to a prior parol agreement to answer for the debt of another is not void under the statute of frauds.

APPEAL from Pike Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Rena Minchener against Fox Henderson to annul a mortgage because given as security for the husband's debt, with cross bill by Henderson to declare the deeds conveying the land to the wife fraudulent and void as to him. From a decree for respondent complainant appeals. Affirmed.

J. M. CHILTON, and W. E. GRIFFIN, for appellant. Where error affirmatively appears injury is presumed unless the contrary affirmatively appears.—*Nelson v. State,* 120 Ala. 83; *Clewis v. Malone,* 131 Ala. 469.

Injury affirmatively appears here. Henderson was not a subsisting creditor at the time of the deed from Minchener to his wife.—*Sloan v. Wilson*, 117 Ala. 583; *Tate v. Murphy*, 80 Ala. 440; 4 Mayf. 396. There is a variance between the pleading and the proof in the cross bill.—14 Enc. of Evid. 133; 130 Pa. St. 299; 39 N. J. E. 130; *Peters v. So. Ry.*, 135 Ala. 533. The agreement, in any event, was a nudum pactum.—*Adams v. Adams*, 26 Ala. 272; *Ervin v. Ervin*, 25 Ala. 236; *Pulliam v. Schimpf*, 109 Ala. 179; *Dargan v. Hewlett*, 115 Ala. 510; *Elmore et al. v. Parrish Bros.*, 170 Ala. 499. No actual fraud is shown, and this is essential in a suit by a subsequent creditor.—*Gilleland v. Fenn*, 90 Ala. 230; 5 Heisk. 346; 20 Cyc. 427; *Allen v. Pearce*, 163 Ala. 612.

JOHN H. WILKERSON, and FOSTER, SAMFORD & CARROLL, for appellee. At the time of the execution of the conveyance from Minchener to his wife, Henderson was an existing creditor, and the conveyance was void as to him, notwithstanding the wife knew nothing of the indebtedness, and participated in none of the fraud.— *Washington v. Arnold*, 167 Ala. 448; *Dickson v. McLarney*, 97 Ala. 389; *McGhee v. Bank*, 93 Ala. 193. Even if not an existing creditor, he was a subsequent creditor, and there was actual fraud in the transaction.—*Echols v. Perung*, 107 Ala. 665; *Echols v. Orr*, 106 Ala. 237; *Gilliland v. Fenn*, 90 Ala. 230, and authorities supra. Although allegations are made in the original pleadings in chancery, it is not necessary to prove that allegation if sufficient allegations are made and proven to entitle complainant to relief, hence, there was no material variance.—*Clemmons v. Cox*, 116 Ala. 572; *Noble v. Moses*, 81 Ala. 548; *Offutt v. Scott*, 47 Ala. 102, and authorities cited.

McCLELLAN, J.—Rena Minchener, the wife of J. R. Minchener, filed her bill against Fox Henderson, praying the cancellation of a mortgage, for $2,130.62, executed, on December 4, 1907, by complainant along with her husband to secure the payment of the husband's note for that amount to Henderson. The mortgage was upon a certain lot in Troy, Ala., which had been conveyed, as a gift, by J. R. Minchener's father to him on August 16, 1906. On May 21, 1907, J. R. Minchener made a voluntary conveyance of this lot (less a part sold to Wood) to his wife. It is upon this conveyance that complainant rests her title to the lot described in her bill, and out of which she would derive her right to have the mortgage canceled as a security upon *her* property for her husband's debt. Henderson asserts, among other things, in his answer and cross-bill, that the voluntary conveyance to complainant was in fraud of his rights as a *then* (May 21, 1907) existing creditor of J. R. Minchener, and prays in his cross-bill that the voluntary conveyance be annulled in accordance with the practice in such cases prevailing. The chancellor declined to grant the foreclosure of the mortgage, as also sought by the cross-bill, upon the notion that the mortgage debt had not matured when the cross-bill was filed. Hence this matter of foreclosure is not the subject of consideration on this appeal.

Whether Henderson was, at the time stated, an existing creditor of J. R. Minchener, depends upon whether, previous to that time, viz., about January, 1907, J. R. Minchener and Henderson had made the agreement to be stated. J. R. Minchener and Fox Henderson were equal partners in a milling and building supply concern, styled, Henderson & Minchener, doing business at Troy. The business was under the management of Minchener. After J. R. Minchener became the owner

of the lot as stated, he decided to build a dwelling upon it. Henderson was a man of large means. Minchener appears to have then had little, if anything, besides his share in the business, which the evidence shows without dispute was heavily indebted, and the lot, the gift of his father. The cross-complainant contends that he and Minchener discussed Minchener's proposed building, and agreed, about January 1, 1907, that the firm should furnish materials, labor, and money to build the proposed house, Minchener keeping a memorandum account of the items, and when the building was completed the amount thereof should and would be charged on the firm books to Henderson, and then Minchener should and would give Henderson a mortgage on the lot to secure the payment to Henderson of the sum so charged to him. It is denied that such agreemnt was ever made, though it is admitted that a mortgage was executed, as stated. It is not denied that values, furnished by the firm assets, to the amount expressed in the note and mortgage to Henderson, were applied to the construction of the dwelling—to the improvement of the lot in question. No sound reason, legal or equitable, has been suggested, and none occurs to this court, why both of the partners in a firm may not, as between themselves, appropriate firm asserts to the advantage of one of them, and agree that, upon the other partner's assumption to reimburse the firm the value of the assets so delivered, the partner to whose advantage such firm assets were advanced should *individually* secure the other partner's repayment by a mortgage on his individual property. Such an agreement, if executed, would satisfy the firm for its thus appropriated assets, and constitute, in consequence, an *individual* liability by the one partner to the other.

If it should be assumed that that character of engagement was, in legal effect, a contract to answer for the debt, default, or miscarriage of another and within the statute of frauds, and if it should be further assumed that a mortgage executed, after the sum was ascertained, in pursuance of such an engagement, did not evidence a compliance with the requisitions of the statute of frauds, the invalidating effect of a noncompliance with the statute of frauds could not be visited upon the contract if it had become executed. The statute of frauds applies to executory, not executed, contracts.— *Kling v. Tunstall,* 124 Ala. 268, 27 South. 420, among others. If the contract which the cross-complainant asserts was made, it was executed. The material, etc., was furnished and applied, and the firm was satisfied therefor by the cross-complainant, and the mortgage was given by J. R. Minchener to assure his reimbursement. Did the parties—the partners—engage as cross-complainant contends?

The evidence upon this earnestly discussed issue has been examined with the utmost care. While there is irreconcilable conflict thereupon between the evidence of the adverse parties, and while there are bases for the necessarily, naturally, partisan argument made for the appellant that all of the evidence, as to details, for cross-complainant upon this issue, does not *perfectly* harmonize, we can see no possible escape from the conclusion, prevailing, on the whole evidence, with the learned chancellor.

There is nothing in the evidence supporting cross-complainant's theory that would or does abnormally tax a rational credulity. The subject-matter and object of the agreement were of the commonplace. The lot owner, under the agreement, got his property improved as he desired, the firm was paid for what it advanced

of its assets, and the other partner was assured of his reimbursement by the mortgage. The admitted acts of the parties, together with the attending circumstances which the evidence discloses, confirm the correctness of the finding on this issue.

There is no sound basis in the evidence for the insistence that Minchener was overawed or overpersuaded by Henderson. He kept the mortgage a month or more before he and his wife executed it. He consulted an attorney in the premises. His conduct entirely accorded with the agreement stated. The book entries, some in his handwriting, conform to the course of dealing and conduct the agreement anticipated. If Henderson secretly desired to dissolve the partnership at the time the mortgage was given, which was after the completion of the dwelling, that fact would not affect unfavorably the performance of the agreement made by the parties before the materials, etc., were used in the building. There was shown no contractual obligation binding either of the members to continue, for any definite period, in the partnership.

There is an insistence for appellant that material variance between allegations of the cross-bill and the proof relating thereto require the reversal of the decree. While there are material differences between that pleading and evidence with respect to the theories of the cross-bill wherein actual fraud is a factor, there is no variance, but, on the other hand, substantial confromity, with respect to the complete, distinct, and separate equity upon which relief was granted below, and which must, on this record, be affirmed here, viz., that Henderson was an existing creditor of Minchener when the voluntary conveyance to the complainant (his wife) was executed—a character of conveyance subject to be avoided at the instance of such a creditor in a court of

equity. Under such circumstances, the failure of proof to sustain distinct equities asserted in the pleadings, on variances between distinct equities there asserted and the evidence adduced in the cause, will not hinder or prevent the granting of relief upon another or other distinct grounds therefor set forth in the pleading and sustained by the evidence . "When the bill justifies relief and the defendants have not been taken by surprise, a decree will not be reversed, or a new trial granted, because of variance."—Authorities collated in *H. B. Claflin Co. v. Muscogee Mfg. Co.,* 127 Ala. 380, 30 South. 555.

The decree is affirmed.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.