## No. 8404.

## FIRST NATIONAL BANK OF DENVER *v.* CRIPPLE CREEK STATE BANK.

1. APPEAL AND —*Presumptions.* Where plaintiff in error contends that the evidence heard below was insufficient to warrant a judgment for defendant in error, the court of review considers the testimony in the light most favorable to the latter, and all conflicts are resolved in his favor. As to documentary evidence and the deductions to be drawn therefrom it is otherwise.

2. ILLEGAL CONTRACT—*Parties in Pari Delicto.* Defendant bank sought accommodation from plaintiff, and, upon full value received, transferred to the latter, with an unqualified indorsement, sundry promissory notes of its customers, it being agreed that plaintiff should receive 6% of the interest to be paid thereupon, and defendant the residue. The notes as they fell due were transmitted to defendant for collection, and were renewed by notes payable to defendant, the defendant returning the renewal notes, with its general indorsement, and 6% of the interest collected thereon. Later, in order to mislead the Bank Examiner as to defendants liabilities, it was verbally agreed that plaintiff should stamp defendant's indorsement "without recourse", and write to the Examiner that it held no paper re-discounted to it by defendant, and that defendant would remain liable to plaintiff while the qualified indorsement remained in force, and would afterwards re-instate upon the notes, or the renewals thereof, its general indorsement. For a year afterwards the renewal notes were returned to plaintiff indorsed without recourse, but subsequently, on demand of plaintiff, all the renewal notes were returned to it, with defendant's general indorsement thereon, and this was continued for a year. Thereupon, plaintiff having sent the notes to defendant for collection, it collected interest and taking new notes to itself it returned them indorsed, without recourse; and declined to change this endorsement, or return the notes last transmitted by plaintiff. Plaintiff thereupon brought this action against defendant as indorser.

Defendant had received, in interest, during this course of business, over $6,000, as its share of the interest collected. *Held* that the agreement between the two banks by which the transaction assumed the false appearance of an actual out and out purchase of the notes, was not only unlawful but reprehensible; but the notes bearing the false indorsement without recourse

being all of the past, and the parties *in pari delicto*, the defendant having received full value for its unqualified indorsement, the court ought not to lend its aid to relieve it of liability thereon.

3. STATUTE OF FRAUDS—*Debt of Another—Executed Contract.* The verbal promise of a bank to reindorse certain notes which it has assigned to another generally, being made while an original and unqualified indorsement thereof was in force, and to subserve the bank's own interest, was not within the statute of frauds; and even if within the statute, the subsequent unqualified indorsement, and the retention by defendant of its share of the interest collected was, in effect, carrying into execution such verbal promise.

4. BANKS—*Officers' Authority.* Cases cited to the proposition that the officers of a bank have no authority to stipulate that the re-discount of the paper of another bank shall be turned into an absolute transfer without recourse.

*Error to Denver District Court, Hon. James H. Teller,*
*Judge.*

Messrs. HUGHES & DORSEY, Mr. GERALD HUGHES and Mr. BERRIEN HUGHES, for plaintiff in error.

Messrs. DINES, DINES & HOLME, Mr. J. C. HELM, Mr. THOMAS J. DIXON and Mr. N. WALTER DIXON, for defendant in error.

Mr. Justice Hill delivered the opinion of the court:

THIS action was instituted by the plaintiff in error to recover $27,500 with interest, being the amount alleged to be due upon five promissory notes executed and delivered by others to the defendant in error, who was the payee therein, and who in turn indorsed and delivered them to the plaintiff in error. Trial was to the court which resulted in a judgment in favor of the defendant in error for costs. For convenience we shall refer to the parties as designated in the pleadings.

The plaintiff contends that the findings are not justified by the testimony. The principal contention is over the force and effect to be given a letter written by an officer of

the plaintiff, as well as certain other acts of both the plaintiff and the defendant concerning the sundry transactions leading up to the present controversy.  As the plaintiff contends the findings are not supported by the testimony, we shall present and · review it in its most favorable light towards the defendant, and where there is any conflict we will accept the defendant's version thereof, except the legal deductions to be drawn from the written instrument.

With but few and slight exceptions, the history concerning the five notes is about the same.  The defense is likewise the same, for which reason we will only outline the testimony concerning the note of Annie E. Cone, embraced in the plaintiff's first cause of action, with some slight references to the others.  This discloses, that in the fall of 1908 the defendant was then, as now, a state bank in Cripple Creek, the plaintiff, a national bank in Denver; that the defendant wanted to discount some of its paper to the plaintiff, which it did under an agreement or arrangement whereby the defendant guaranteed its payment, by placing its general indorsement upon the notes; that under this arrangement the plaintiff was to have only six per cent. per annum of the interest called for by such paper, and the defendant the balance of the interest; that pursuant to this arrangement, upon October the 30, 1908, the defendant mailed to the plaintiff seventeen notes payable to defendant's order, and by it indorsed to the plaintiff, in the aggregate sum of $41,002, which amount the plaintiff paid therefor; that this included a note for $5,000 executed by Annie E. Cone, due three months after date, drawing interest at the rate of twelve per cent. per annum; that when this note became due, it, along with others, was sent to the defendant for collection or payment; that the defendant collected the interest and accepted another or new note for the principal due in three months, payable to its order, with interest at the rate of twelve per cent. per annum, which it indorsed without limitation, and mailed to the plaintiff, together with one-half of the interest collected, as per the terms of the original agreement, keeping the other half of the interest;

that this course of procedure, with renewals every three months, continued until in June, 1910, when it appears the State Bank Commissioner was making an examination of the defendant bank, and it was desirous of showing that it was not liable upon, and did not have outstanding, any re-discount paper; that this fact was explained to the officers of the plaintiff by the defendant's cashier who appealed to them for assistance in this respect, with the result that a varbal agreement was entered into to the effect that the plaintiff would have stamped the words "without recourse" upon the Annie E. Cone note then in existence, and the renewals of the other notes therefore re-discounted to it, and then held by it with the defendant's general indorsement thereon, so that the same upon their face would show no liability against the defendant bank; that the plaintiff's officers also agreed to write a letter to the State Bank Commissioner, stating that it held no rediscount paper of the defendant, etc.; that in consideration that the plaintiff do this, the defendant, through its cashier, who negotiated and consummated this arrangement, agreed that, regardless of such indorsements, being placed upon the notes, the defendant would guarantee their payment or make good any loss to plaintiff, etc., during the period said indorsements "Without recourse" remained thereon, and would thereafter cause to be reinstated upon said notes, or the renewals thereof, the defendant's general indorsement; that pursuant to such agreement the plaintiff caused this Cone note and the other notes then held by it to be stamped "Without recourse" and its vice-president to write a letter to the State Bank Commissioner bearing date June 18, 1910, as follows:

"E. W. PFFEIFER, Esq.,
        State Bank Commissioner,
                                City.

Dear Sir:

Our discount department advises me that they have notified you a few days ago that the bank of Victor and The Cripple Creek State Bank had some rediscounts with us. *This paper was all purchased outright with a 'without re-*

*course' stamp on it, so that Mr. Rollestone's statement that he had no rediscounts is correct.*

Trusting this explanation will be satisfactory, I am,

Yours very truly,

THOS. KEELY,

Vice-Pres."

That thereafter, when the Cone note then in existence and the other notes became due, they were sent to the defendant bank for collection or payment, when it again collected the interest, took new notes for the principals in its own name, and surrendered to the maker the old ones, and forwarded the new ones to the plaintiff with "Without recourse" indorsed thereon, keeping the same amount of the interest as theretofore, forwarding to the plaintiff its share of the interest with the new notes; that this practice continued for one year, or until June, 1911, when the defendant's officers' attention was called to the fact of the agreements under which the "Without recourse" indorsement was placed thereon, with a request that it be eliminated thereafter and its general indorsement placed thereon, which was done upon those returned in June, 1911; that upon their maturity they were in turn sent to the defendant bank for collection or payment, who, in turn collected the interest, took new notes payable to itself and surrendered the old ones, returning the new ones with the same amount of interest as before to the plaintiff, with its general indorsement thereon; that this practice continued for the period of one year and until June, 1912, at which time when the notes became due, the plaintiff again returned them to the defendant for collection or payment, who, in turn, collected the interest, took new notes payable to itself for the principal, returned the old ones to the makers, and forwarded the new ones to the plaintiff, but with its indorsement "Without recourse" thereon, also enclosed draft for a portion of the interest collected upon the last notes, as before, retaining the same portion as before for itself; that the plaintiff declined to accept the new notes with the "Without recourse" indorsement and returned them, together with the re-

mittance for the interest, to the defendant, with instructions that it either erase the "Without recourse" indorsement, and substitute its general indorsement, or return the notes sent to it for collection. This, the defendant declined to do. This suit was then brought to recover upon the defendant's indorsement as it stood upon the last notes sent to it for collection or payment.

The testimony as above outlined stands uncontradicted, except as it conflicts or is inconsisent within itself. The trial court found that there was no consideration for the defendant's indorsement or guarantee upon the notes sued on, for which reason he states that the plaintiff has no right of action. This is followed by the statement that this would not be true except for the fact that the notes are related to each other as renewals, and were in the first instance bought outright by the plaintiff, and not merely re-discounted.

The only claim of evidence to support the contention that the original notes were bought outright with a "Without recourse" stamp on them, is Mr. Keely's letter to the bank commissioner, of June 18, 1910. We cannot agree that it supports this contention when applied to the first notes in the history of this transaction sold to the plaintiff on October 30, 1908, which was about twenty months prior to the date of this letter. It will be observed that this letter refers to the notes then in existence. These were not the first in the series of this transaction, but were the fifth or sixth renewals thereof, during which period it is admitted that the defendant bank collected and kept for itself interest at the rate of six per cent. per annum upon this Cone note; the same amount upon some of the others, with a slight lesser amount upon the others. There is no dispute concerning this. Likewise, as tending to support Mr. Keely's sworn testimony, there are the original notes, something like fourteen renewals of each, wth the unqualified indorsement of the defendant thereon, the collection, by the defendant, of the interest and the keeping of one-half thereof on the Cone note and others, with but a slight lesser amount on others, and the records of the bank; none of which is

contradicted by the makers of the notes, the officers or the former officers of the defendant bank or anyone else.  In such circumstances, we cannot agree that the testimony was sufficient to show that the original transaction was a sale outright, or other than a re-discount of the paper.  Where, as here, the testimony alleged to support it is in writing, this court is not bound to accept the deductions of the trial court as conclusive concerning it, but can decide for itself the weight to which the written instruments are entitled. *Stuart & Co. v. Asher,* 15 Colo. App. 403, 62 Pac. 1051; *Colo. Dry Goods Co. v. Dunn Co.,* 18 Colo. App. 409, 71 Pac. 887; *Talcott v. Mastin,* 20 Colo. App. 488, 79 Pac. 973.

What are the relative rights and liabilities of the parties upon the notes in suit under this state of facts?  It will be observed, in his testimony, Mr. Keely does not admit that the statement in his letter to the bank commissioner that his bank held no re-discount paper of the defendant was false.  His theory was that the stamp "Without recourse" on the paper relieved it from being re-discount paper, but that the verbal agreement to guarantee, etc., and to put it back on, were accepted in lieu thereof, and that his bank was protected by this substitute agreement.  If such was the case, then it must be conceded, that the officers of the two banks were attempting to do indirectly that which they could not do directly, and by this method sought to "put one over" on the State Bank Commissioner, in violation of our state banking laws.  That this was unlawful as well as reprehensible, must be conceded.  That there was no consideration passing to the plaintiff bank for its part of this transaction other than the verbal promise of the defendant's cashier, is not disputed.  The question then presents itself whether these attempted unlawful transactions relieved the defendant bank from its liability upon notes executed twenty-one months thereafter, bearing its general indorsement, and being the fourth renewal of the ones upon which it was first placed under the terms of the alleged agreement above outlined that it should be thus reinstated, and where

the defendant continued to collect and keep as its own about one-half of the interest.

Assuming that the "Without recourse" stamp upon the notes in existence at the time of the fraudulent agreement was valid, and relieved the defendant from its then liability thereon, we do not think it can escape its liability upon those in controversy. The notes embraced in these verbal agreements were valid paper, and the verbal contracts pertaining to them and their renewals had been entirely executed nine months before the present notes were given, and a year before their maturity. They were at both of these dates a thing of the past. The defendant had received full value for the original notes from the plaintiff, and was, at the time of the suit, but carrying out the agreement made at the time of the purchase of the first notes by taking renewals in its own name, indorsing them to plaintiff, collecting the interest and retaining one-half on the Cone, and some of the other notes, with a slight lesser amount upon the others, and up to the time of the suit had received $1,080.33 as its share of the interest on the Cone note, *alone* and upwards of $6,000 as its share of the interest upon them all. This, of itself, is inconsistent with the defendant's claim that it was simply acting as the agent of the plaintiff in taking these renewals.

In *Branham v. Stallings*, 21 Colo. 216, 40 Pac. 396, this court quotes with approval from *Norris v. Norris' Admr.*, 9 Dana's Ky. Reps., 317, 35 Am. Dec. 138, as follows:

"When the parties to an illegal or fraudulent contract are *in pari delicto*, neither a court of equity nor a court of law will aid either of them in enforcing the execution of that which may be executory, or in revoking or rescinding that which may have been executed. In such a case, the law will not be the instrument of its own subversion, and, to every invocation of its assistance, replies, *'In pari delicto portior est conditio defendentis.'* "

We think the principle just quoted is applicable here, and that the courts ought not to lend their aid in revoking or rescinding the general indorsements placed upon these last

renewals, when they (as were their predecessors) are supported by a substantial consideration, viz, a large part of the interest collected and retained by the defendant, which otherwise would be the property of the plaintiff.

In arriving at the above conclusion, we are assuming for the purpose of this case, but without deciding, that the "Without recourse" stamp upon the former notes relieved the defendant from any liability thereon. The following cases tend to sustain the contention that neither the cashier, the president or vice-president of the bank has authority to make such contracts and that under such circumstances the indorsements would not relieve the original guarantor, but its liability would remain as it was had they not been made. We think it unnecessary to go into this question.

Daniel on Negotiable Instruments (5th Ed.) vol. 1, § 395; *Bank of U. S. v. Dunn*, 6 Pet. 51, 8 L. Ed. 316; *Ecker v. First Nat. Bank*, 59 Md. 291; *Hodge's Executor v. First Nat. Bank*, 22 Grat. (Va.) 51; *Olney v. Chadsey*, 7 R. I. 224; *Thompson v. McKee*, 5 Dak. 172, 37 N. W. 367; *Daviess County Sav. Assn. v. Sailor*, 63 Mo. 24; *Savings Bank v. Hughes*, 62 Mo. App. 576; *Merchants' Bank v. Rudolf*, 5 Neb. 527; *State Bank of Moore v. Forsyth*, 41 Mont. 249, 108 Pac. 914, 28 L. R. A. (N. S.) 501.

The defendant contends that, if true, its oral promise to reindorse is void under our statute of frauds, not being in writing and being a promise to answer for the debt of another. If sanction could be given to the validity of the transaction upon which this promise is based, this claim might be answered by the facts that when the promise was made the defendant was liable on the notes, and its primary object was to serve itself rather than to answer for the debt of another, and for its own interest it agreed to thereafter put itself in the position which it then stood, namely, become the guarantor of the notes. This might be held to be an original, and not a collateral agreement. *Fisk v. Reser*, 19 Colo. 88; Browne on Statute of Frauds (5th ed.), §§ 164, 165, 204. But, as stated, we do not care to give our sanction to any contract involving such a transaction, hence,

assuming that it was void, but that the indorsements relieved the defendant from its liability on the notes then in existence, the entire contract had been executed long prior to bringing the suit. The indorsements were reinstated and continued upon three subsequent renewals at each of which times the defendant, as it had before, collected all of the interest and retained its share, which was a substantial amount. The contract having been executed takes it out of the statute of frauds.

*Tynon v. Despain*, 22 Colo. 240, 43 Pac. 1039; *McLure v. Koen*, 25 Colo. 284, 53 Pac. 1058; Browne on the Statute of frauds (5th Ed.) § 116; *Franklin v. Matoa G. M. Co.*, 158 Fed. 941, 88 C. C. A 145, 16 L. R. A. (N. S.) 381, 14 Ann. Cas. 302; *Minchener v. Henderson*, 181 Ala. 115, 61 South, 246; *Harris T. & W. Co. v. Moor*, 10 Ala. App. 469, 65 South. 416; *First Nat. Bank v. Gallagher*, 119 Minn. 463, 138 N. W. 681, Ann. Cas. 1914B, 120.

The judgment is reversed.          *Decision en banc.*

Mr. Justice White and Mr. Justice Scott dissenting.

Mr. Justice Teller not participating.

Decided February 7, A. D. 1916.    Rehearing denied April 2, A. D. 1917.