(95 South. 23)

ROACH v. OLIVE et al. (8 Div. 403.)

(Supreme Court of Alabama. Jan. 4, 1923.)

1. Equity ⬟275—Substituted amended bill filed before decree becomes original pleading.

An amendment to an original bill designed evidently as a substitute therefor became, upon filing and without order allowing the amendment, the initial pleading in the main cause under the express provisions of Gen. Acts 1915, pp. 705, 706, §§ 1, 3, which apply if the amendment is filed before final decree, so that the remedy for prejudice resulting from the withholding of the substituted bill after filing it was not by motion to strike, but by appeal to the court of equity for protection against such prejudice, which it had ample power to give.

2. Appeal and error ⬟750(2)—Ruling on demurrer to original bill not reversed after substituted bill was filed.

Assignments of error to the action of the court in overruling demurrer to the original bill are unavailable to present for review the sufficiency of a substituted bill to which no demurrer was filed.

3. Equity ⬟276—Answer and cross-bill held pleadings in the case notwithstanding failure to refile after substitution of original bill.

Where a substitute original bill was filed after the answer and cross-bill to the original bill had been filed and the case was tried on the issues made by the substituted bill, the answer, and the cross-bill, though the latter were not refiled after the filing of the substituted bill, those pleadings constitute the pleadings in the case and formed the basis for the issues litigated.

4. Appeal and error ⬟878(1)—Decree for complainant denying one ground of relief is conclusive in absence of cross-appeal or assignments.

Where the decree gave relief upon one ground sought by complainant but denied it upon another ground, it became conclusive against complainant's rights on the other ground, where he perfected no cross-appeal from the decree and no consent to cross-assign errors was given under Supreme Court Rule 3, Civ. Code, p. 1507.

5. Partition ⬟9(2)—Bill and prayer held to sustain decree based on partition by agreement.

A substituted bill for partition based upon the theory of a resulting trust, but also alleging that each party took separate portions of the tract and that complainant had been in possession of his portion for many years, and which contained a general prayer for the establishment of his title to the tract occupied by him, is sufficient to sustain relief on the theory of division by agreement, after the court found against the resulting trust.

6. Partition ⬟9(2)—Equity can protect division by parties long acquiesced in.

Where a tract of land had been divided between parties claiming the ownership thereof though the title stood in the name of one of them alone, equity can protect the rights of the other to his portion of the tract after he had remained in absolute continuous possession thereof for upwards of 30 years.

7. Partition ⬟9(2)—Evidence held to show division by parties.

Evidence *held* to sustain a finding that a tract of land, title to which was taken in the name of defendant's predecessor in title, had been divided by agreement between him and his brother, the complainant, and that complainant had been in possession of the tract set apart to him for more than 25 years.

Appeal from Circuit Court, Lauderdale County; Charles P. Almon, Judge.

Bill by Jim Olive and Mattie Olive against Kate Roach to sell land for division, etc. Decree for complainants, and respondent appeals. Affirmed.

J. Fred Johnson, Jr., of Florence, for appellant.

A decree in equity will not be sustained, unless it conforms to the pleading and proof. 21 Cyc. 553. Complainant, Jim Olive, hav-

ing acquiesced for 40 years in the legal title of his brother, was guilty of laches. 21 C. J. 212; 64 Ala. 572; 205 Ala. 514, 88 South. 649; 168 Ala. 314, 52 South. 914. When possession was permissive at its inception, it cannot become adverse without disclaimer of title of party against whom such title is claimed and notice to such party. 67 Ala. 221; 96 Ala. 522, 11 South. 695, 38 Am. St. Rep. 116; 204 Ala. 298, 85 South. 543. No presumption in favor of the chancellor's findings as to the facts shall be indulged. 127 Ala. 378, 30 South. 555; 35 Ala. 590; 137 Ala. 337, 34 South. 346; 139 Ala. 402, 36 South. 11.

James C. Roberts, of Florence, for appellees.

The proof shows that Jim Olive's possession met all the requirements as to adverse possession. 141 Ala. 451, 37 South. 799, 109 Am. St. Rep. 45. Staleness or laches is founded on acquiescence. Acquiescence involves knowledge of the assertion of an adverse right. If there is no assertion of adverse right, there can be no acquiescence. 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81; 90 Ala. 117, 7 South. 512; 200 Ala. 363, 76 South. 124. Appellee, Jim Olive, was entitled to relief under his general prayer. There was no variance in the allegations and proof. 176 Ala. 138, 57 South. 706; 203 Ala. 223, 82 South. 473.

McCLELLAN, J. From a final decree in equity in favor of complainant, resulting from submission on pleadings and proof, the respondent appeals. There are some preliminary matters of which account should be taken.

[1] The original bill was filed March 2, 1920. Demurrer thereto, with answer and cross-bill associated, was filed April 2, 1920. Demurrer to the original bill was overruled through decretal order on July 16, 1920. Respondents to the cross-bill, constituted of original complainant (appellee) and Mattie Olive, filed their answer to the cross-bill on May 1, 1920. On July 15, 1920, original complainant filed an amendment to the original bill, designed evidently to substitute this pleading for his original bill. This substitute for the original bill became, upon filing and without order allowing the amendment, the initial pleading in the main cause. The act approved September 22, 1915 (Gen. Acts 1915, pp. 705, 706), so expressly provides (sections 1, 3), 'if the amendment is filed before "final decree," as was the course in the present instance. See S-S. S. & I. Co. v. Yancey, 201 Ala. 200, 202, 77 South. 726; Farmers' State Bank v. Inman, 207 Ala. 284, 92 South. 604, 606. Hence the motion to strike this substitutionary amendment was without merit. If, after filing the amendment, solicitor for original complainant kept it in his possession, respondent's solicitor only becoming aware of its presence as a pleading in the cause months afterwards when acknowledging service thereof, the powers of the court were adequate to protect respondent from any prejudice that might, but apparently did not, result from the retention of the pleading by the opposing solicitor.

[2] No demurrer to this substituted original bill appears to have been filed; hence assignments of error referable alone to the action of the court in overruling demurrer to the original bill are unavailable to present for review the sufficiency of this substituted bill.

[3, 4] The main and the cross causes appear to have been contested, including the taking of voluminous testimony, after notice of the amendment to solicitor for original respondent, upon the theory that the answer and cross-bill were pleadings in the cause, notwithstanding the answer and cross-bill are not shown to have been refiled after the amendment or after notice of it was acknowledged by solicitor for respondent, appellant. This acquiescence and course of contest effected to constitute the pleading in the cause, main and cross, the bases of the issues litigated to final decree in the court below. Bondurant v. Sibley, 37 Ala. 565, 571. There are no cross-assignments of error by appellee. Furthermore, the appellee, original complainant, perfected no cross-appeal from the decree; and no consent to cross-assign errors was given. S. C. Rule 3, Civil Code, p. 1507. In the decree under review the court did not establish a resulting trust in appellee, original complainant, in the land in question; thereby, in effect, concluding against appellee upon that aspect of his bill. There being no cross-assignment of errors by appellee, bringing up for review that phase of the relief sought by the bill and, in effect, denied by the decree rendered, no inquiry on this appeal into appellee's asserted right to have had relief as the beneficiary of a resulting trust will be undertaken.

[5] The substituted, as was the original, bill was filed by Jim Olive and Mattie Olive, widow of Sam Olive, who died in 1913, against Kate Roach, daughter of the marriage of Sam Olive and the said Mattie Olive. These parties are all negroes. The substituted bill's averments, and also the special prayer, invoked the court to declare in the complainant Jim Olive a resulting trust in an undivided interest in the entire tract called the Olive place, consisting, originally, of about 205 acres; this upon the theory that Sam Olive and Jim Olive, who were brothers, jointly purchased the land from Mr. Perry, and conveyed to Sam Olive by him, each of the brothers paying one-half of the purchase money. As has been stated, that theory of the bill was not accepted by the court below. It was, in effect, denied in the decree under review. In describing the possession taken, the improvements effected,

and the use made by Sam and Jim Olive of the tract, and after alleging Jim Olive's "absolute possession," etc., of the 56 acres to be later mentioned, it is averred in the fourth paragraph:

"That no division was ever made between the said Sam Olive and Jim Olive, but that both used their respective parts as herein set out."

The decree under review adjudged that a division or partition between them of the respective parts of the tract lying on either side of the Natchez Trace Road was long ago accomplished. It is thereupon insisted for appellant that the decree, in favor of the original complainant, contradicts the indicated averment of his bill, and that error was thereby introduced into the decree. The contention is not sound. "Where the bill justifies relief and the defendants have not been taken by surprise, a decree will not be reversed, or a new trial granted, because of variance." Authorities collated in H. B. Chalfin v. Muscogee Mfg. Co. at page 380 of 127 Ala. (30 South. 555); Minchener v. Henderson, 181 Ala. 115, 121, 61 South. 246. The bill avers, and the answer to appellant's cross-bill (alleging no right or title in the original complainant, Jim Olive) reiterates, the "absolute possession," among other indicia of claim and ownership, by Jim Olive of the tract of 56 acres, south of the Natchez Trace Road, in which the decree established Jim Olive's title. There is a general prayer in the bill, predicated of mistake in the special prayers, invoking the court to establish Jim Olive's title in fee to the 56 acres occupied by him. Under the facts averred, if the evidence justified the conclusion, the relief awarded was so accorded without error. Rosenau v. Powell, 173 Ala. 123, 129, 55 South. 789, among others.

In pronouncing upon the very voluminous testimony the decree declares:

"That in the year 1881 Sam Olive and Jim Olive purchased from F. M. Perry the following described lands: * * * That the said Sam Olive and Jim Olive divided said tract of land long years ago, and that Sam remained in possession of that part of said tract of land lying north of the Natchez Trace Road and took that part of said land as his interest therein, and Jim Olive took that part of the land lying south of the Natchez Trace Road as his interest in said lands and remained in possession of them and has been in possession of said lands for 20 or 25 years."

These conclusions of fact required the adjudication made that Jim Olive owned in fee the 56 acres south of the Natchez Trace Road.

From a very careful consideration of the entire evidence bearing upon and related to these inquiries of fact, we conclude that findings thus made are amply supported and fully justified by the evidence, except the period of Jim Olive's undisturbed possession, use, and enjoyment of the 56-acre tract, south of the Natchez Trace Road, was upwards of 30 years before the contest was instituted and above 25 years before Sam Olive died in 1913.

[6] In Betts v. Ward, 196 Ala. 248, 72 South. 110, many of the earlier cases delivered here, as well as the statements of text-writers, are noted and quoted upon the elements and effects to establish incontestible rights as between the parties and their privies, of a partition or division of lands by those interested in or entitled thereto, of which the respective divisors have taken exclusive possession, and maintained or enjoyed it for great periods of time. The principles there reiterated afford the legal bases, in a court of equity, for the vindication and establishment of such rights and title as the stated conclusions of fact disclose to have been in Jim Olive to the 56-acre tract south of the Natchez Trace Road.

[7] The evidence is conflicting in its tendencies and in its effects; but, from a careful consideration of all of it, the quoted conclusions appear to be fully justified. That these negroes were the joint negotiators for the purchase of this whole tract from Mr. Perry cannot be doubted on the present record; unless we reject without justifying reason the testimony of witnesses who, for aught that appears, are entitled to unqualified credit, who were in a position to know that about which they undertake to testify, who relate concurrent events or subsequent conduct that consist alone with the establishment of the theory to which they are called to contribute through their testimony. For the like reason there is no escape from the conclusion that, notwithstanding the difference in the ages of Sam and Jim Olive (the former over 21 in 1881, and the latter, though a minor, yet old and developed enough to serve as a crop hand on the place), and that Sam Olive was the head of the household (the "boss"), their joint efforts and the results of such efforts on the farm furnished the money with which the purchase money was paid to Perry. The then comparative youth of Jim naturally suggests the absence of means with which to so contribute to the purchase money; but the evidence that he in fact so contributed is presented without satisfying reflection upon its truth, and there is no such inherent improbability of its truth as to warrant its rejection. They jointly negotiated for the purchase of the land and jointly paid the purchase money therefor. They had the deed made to Sam, the adult. They went into possession of the place; the family then consisting of these two brothers, their mother and grandmother, and their sisters. The evidence does not even indicate that the women took any part in the negotiation and the purchase, though they all worked on the place as negroes in their situation usually do in this section. They were harmonious. A year later, about 1882,

Sam married, and had children. The Natchez Trace Road-split the tract, the 56 acres in question lying to the south and a larger area to the north of that road. In 1887 Jim moved on the 56 acres as his home. He built houses on it, and lived there from 1887 to about a year before this controversy arose, taking thereto some, if not all, of the unmarried women of the original household. He paid no rent to Sam. None was demanded. He paid taxes on the land, though it was all assessed, during Sam's lifetime (till 1913), to Sam. That Sam recognized the 56-acre tract or part as being Jim's is established, notwithstanding there is testimony to the contrary. That these brothers, having jointly purchased the whole tract, thought and intended their acts in this regard to constitute a division of the land between them, is the only view consistent with their acts that, in a sense, token a continuous proclamation for a period of over a quarter of a century. What the one or the other of them may have said, affirmed, or denied, in the course of the years, is of secondary effect when contrasted with their acts in the premises. True, the division or partition thus intended did not make an equal division of the land, either in area or in value; but nevertheless it was a division based upon the natural boundary the Natchez Trace Road afforded. The fact that they both took for farm use "wood" from the woodland between the thus segregated tracts is referable to their amicable relations, not to any intent inconsistent with their acts in assigning the respective tracts, of the larger tract, to its occupant.

There was not sufficient evidence, if any, to justify the court below in awarding in the decree appealed from a solicitor's fee to the solicitor for Kate Roach, as claimed in her cross-bill. In Graham v. Graham, 207 Ala. 648, 93 South. 660, and in earlier decisions therein noted, the requisites to an allowance of solicitors' fees under the statutes pertinent are stated. The decree under review is not affected with error because of the court's declination to award compensation to appellant's solicitor.

In the respect the appellant assails the decree on this appeal—there is no cross-appeal or cross-assignment of errors—the decree is not subject to objection. It is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.